IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

FILED
OCT 16 ~~~
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

JUSTIN GAUTHREAUX,

    Plaintiff,

v.

CIVIL ACTION NO. 2:08cv387

UNITED STATES OF AMERICA,

    Defendant.

and

JUSTIN GAUTHREAUX,

CIVIL ACTION NO. 2:08cv615

    Plaintiff,

v.

WIGGINS LIFT CO., INC.,

    Defendant.

## *MEMORANDUM OPINION AND ORDER*

Before the Court are the cross Motions for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure of Justin Gauthreaux ("Plaintiff") and Wiggins Lift Co., Inc. ("Wiggins"). Having carefully reviewed the parties' pleadings, the Court finds that this matter is now ripe for judicial determination. For the reasons set forth below, Plaintiff's Motion is **DENIED** and Defendant Wiggins Motion is **GRANTED**.

### I. FACTUAL AND PROCEDURAL HISTORY

On August 18, 2008, Plaintiff Justin Gauthreaux ("Plaintiff") filed Civil Action No.

1

2:08cv387 ("Aug. 18 Compl.") against Defendant United States of America ("United States") in this Court alleging, *inter alia*, negligence. On or about December 23, 2008, Plaintiff filed Civil Action No. 2:08cv615 ("Dec. 23 Compl.") against Defendant Wiggins in this Court alleging, *inter alia*, breach of maritime product liability duties, breach of strict liability, failure to warn, and negligence. On January 16, 2009 after finding common questions of law and fact, this Court consolidated the above captioned cases for purposes of pretrial and trial proceedings into Civil Action No. 2:09cv387.

The case against the United States arises out of an admiralty and maritime claim pursuant to the Public Vessels Act, 46 U.S.C. § 31101 *et seq.* and the Suits in Admiralty Act, 46 U.S.C. § 30901 *et seq.* (Aug. 18 Compl. ¶ 1.) Plaintiff was an employee covered under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901-950. Plaintiff's claim against the United States, as shipowner, is allowed under 33 U.S.C. § 905(b). Plaintiff's cause of action arose on January 29, 2007, when, while employed by Sigmon Group as an installation technician, he was working aboard the USS Theodore Roosevelt which was docked at the Naval Base in Norfolk, Virginia. (Aug. 18 Compl. ¶ 3.) Plaintiff was in hanger bay number 1 helping move cabinets, when a twenty ton forklift, operated by a member of the crew of the Roosevelt, ran over Plaintiff's left foot, which resulted in his left leg having to be amputated. (Aug. 18 Compl. ¶ 3.)

Plaintiff alleges that the United States, as owner and operator of the vessel upon which Plaintiff was injured, is responsible for the negligence of the vessel's crew, thereby entitling Plaintiff to damages. (Aug. 18 Compl. ¶ 1.) Specifically, Plaintiff asserts that his injuries were caused by the negligence of the United States' agents and employees because: the driver of the

forklift was negligent in his operation of the forklift; the driver of the forklift was neither properly trained, certified nor licensed to drive the forklift; the driver of the forklift was not supervised; no spotter was with the forklift as required; and the forklift was not appropriate for the task in which it was being used. (Aug. 18 Compl. ¶ 4.) Plaintiff further asserts that Plaintiff was not contributorily negligent. (Aug. 18 Compl. ¶ 5.)

In his Complaint against Wiggins, Plaintiff asserts that Wiggins designed, manufactured and sold to the United States of America, the twenty ton forklift that ran over Plaintiff's foot. (Dec. 23 Compl. ¶ 3.) Plaintiff claims that the forklift was unreasonably dangerous for a foreseeable use because: the forklift did not have mirrors for the operator to use to see persons or objects on the deck; the forklift had inadequate sight lines for the operator to see all sides of the forklift; the operational manual that accompanied the forklift failed to instruct appropriately about the above-mentioned subjects; and the forklift did not have adequate mechanical warning devices. (Dec. 23 Compl. ¶ 4.)

On August 10, 2009, Plaintiff filed a Motion for Summary Judgment. Wiggins filed its Opposition on August 13, 2009, and the United States filed its Opposition on August 24, 2009. Plaintiff filed his Rebuttal on August 29, 2009. On August 28, 2009, Wiggins filed a Motion for Summary Judgment. Plaintiff and the United States filed Oppositions on September 4, 2009 and September 11, 2009 respectively. On September 14, 2009 Wiggins filed its Rebuttal.

## II. LEGAL STANDARD

Rule 56(c) provides for Summary Judgment if the Court, viewing the record as a whole, determines "that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Haulbrook v. Michelin N. Am., Inc.*,

252 F.3d 696, 702 (4th Cir. 2001) (citing *McKinney v. Bd of Trustees of Mayland Cmty. Coll.*, 955 F.2d 924, 928 (4th Cir. 1992) ("[S]ummary judgments should be granted in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not necessary to clarify the application of the law.")). In deciding a motion for summary judgment, the Court must view the facts, and inferences to be drawn from the facts, in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To defeat summary judgment, the nonmoving party must go beyond the pleadings with affidavits, depositions, interrogatories, or other evidence to show that there is in fact a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

## III. DISCUSSION

### A. Plaintiff's Motion for Summary Judgment

Plaintiff asserts that he is entitled to summary judgment because the United States is liable for negligence as a matter of law, and because under the undisputed facts, Plaintiff cannot be found guilty of any contributory negligence as against the United States and Wiggins. Specifically, Plaintiff argues as evidence of negligence that the United States admits that the forklift operator was not licensed, which is a breach of Occupational Safety and Health Administration ("OSHA") regulations 29 C.F.R. § 1910, *et seq.* Furthermore, Plaintiff argues that because the forklift operator was not licensed, the United States, as shipowner, is liable

under Navy regulations of 33 U.S.C. § 905(b) as defined by the Supreme Court in *Scindia Steam Navigation Co. v. De los Santos*, 451 U.S. 156 (1981). In *Scindia*, the Supreme Court held that a vessel may be liable if it actively involves itself in repair operations and negligently injures a repairman. 451 U.S. at 166-67.

The United States argues in its Opposition that the forklift operator was qualified and licensed under Navy regulations to operate the equipment. Furthermore, the United States argues that OSHA regulations do not apply to any conduct of the U.S. Navy. The United States and Wiggins assert that a comparative fault scheme applies in negligence actions brought under 33 U.S.C. § 905(b) rather than a contributory fault scheme that Plaintiff avers. Therefore, Plaintiff's comparative fault must reduce any award to him by the percentage of his causative negligence.

This Court finds that there is a genuine issue of material fact as to whether the forklift operator was qualified and licensed to operate the forklift and whether the forklift operator was negligent, precluding a finding of summary judgment. In supporting a motion for summary judgment, the moving party has the burden of showing that there is an absence of evidence to support the non-moving party's case or that there is no genuine dispute as to a material fact, and Plaintiff has not met that burden. Accordingly, Plaintiff's Motion for Summary Judgment is **DENIED**.

### B. Defendant Wiggins' Motion for Summary Judgment

Wiggins asserts that it is entitled to summary judgment as a matter of law for two reasons: First, Wiggins argues that Plaintiff's sole liability expert Dr. Robert A. Warren ("Dr. Warren") is not qualified to render an opinion under Federal Rule of Evidence 702 concerning

the design of the forklift that is the subject of this litigation. Second, Wiggins argues that it is immune from liability under the government contractor defense because the forklift at issue was designed according to the United States' precise specifications.

### 1. Testimony of Dr. Robert A. Warren

On October 8, 2009, United States Magistrate Judge Tommy E. Miller held a hearing regarding Wiggins' Motion in *Limine* to Exclude the Testimony of Dr. Warren. Judge Miller held that Dr. Warren could testify as to the lift design and the presence or absence of mirrors, however, "[h]e may not...testify as to whether mirrors should have been installed or as to any causal element of the Plaintiff's injury vis-a-vis the lack of mirrors, due to his lack of forklift design experience." (Order on Mot. in Limine 3.) Furthermore, Judge Miller held that Dr. Warren's testimony with respect to the lift design and the presence or absence of wheel guards is impermissible because it: "(i) is not based upon any data collected by Dr. Warren, as by his own admission he did not test the Wiggins lift...;(ii) is not the product of any reliable principles or method, as Dr. Warren has never operated or serviced a Wiggins lift...; and (iii) does not apply Dr. Warren's expertise to this case, as he has never designed or manufactured a forklift." (Order on Mot. in Limine 3.)

As stated above, Plaintiff states a claim alleging maritime product liability. Specifically, Plaintiff asserts that Wiggins negligently designed and manufactured the forklift and that this negligent design led to his injury. To establish a claim for negligence based on a defective product under Virginia law, Plaintiff must establish that the product contained a defect which rendered it unreasonably dangerous for ordinary or foreseeable use, and that the defect existed when it left the control of the manufacturer and was the actual cause of plaintiff's injury.

*Alevromagiros v. Hechinger Co.*, 993 F.2d 417, 420 (4th Cir. 1993). Thus, key to this determination is establishing proof of legal causation. *Hartwell v. Danek Med., Inc.*, 47 F. Supp. 2d. 703, 707 (W.D. Va. 1999) (citing *Owens v. Bourns, Inc.*, 766 F.2d 145, 151 (4th Cir. 1985)). Therefore, for each claim that Plaintiff asserts, Plaintiff has the burden to prove that the Wiggins forklift caused his injuries. Proving cause by an expert in a products liability action is not mandatory under Virginia law; however in a products liability action, proof of causation must ordinarily be supported by expert testimony because of the complexity of the causation facts. *McCauley v. Purdue Pharma L.P.*, 331 F. Supp. 2d 449, 464 (W.D. Va. 2004) (citing *Rohrbough v. Wyeth Labs., Inc.*, 916 F.2d 970, 972 (4th Cir. 1990)). Besides the testimony of Dr. Warren, Plaintiff has presented no evidence that could lead a reasonable juror to conclude that Wiggins' design and manufacture of the forklift caused Plaintiff's accident. In the absence of this proof regarding this technical subject matter, Plaintiff's claim against Wiggins must inevitably fail. *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 249 (4th Cir. 1999) (holding that a "plaintiff may not prevail in products liability case by relying on the opinion of an expert unsupported by any evidence"); *Smith v. Va. Commonwealth Univ.*, 84 F.3d 672, 687 (4th Cir. 1996) (holding that an expert's opinion is inadmissible when it is based on assumptions that are speculative and are not supported by the record).

It is worth noting that from his analysis and experience, Dr. Warren will be able to testify as to what he saw when he sat in the forklift and what he proposes he would have seen if mirrors had been in place. However, he cannot testify beyond mere supposition as to wheel guards, alarms, or any other part of the lift for that matter that allegedly caused Plaintiff's injuries. Because Dr. Warren's testimony has been drastically limited, Plaintiff has virtually no

evidence to prove the essential elements of his case against Wiggins. A complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 323. Thus, Wiggins is entitled to judgment as a matter of law.

### 2. Government Contractor Defense

Even if Dr. Warren could have testified as an expert as to the causal connection between the Wiggins forklift and Plaintiff's injury, Plaintiff is unable to survive summary judgment based on Wiggins' assertion of the government contractor defense. The Supreme Court determined in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988) that "liability for design defects in military equipment may not be imposed, pursuant to state law, when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States. *See also Ramey v. Martin-Baker Aircraft Co.*, 874 F.2d 946, 950 (4th Cir. 1989) (holding same).

Plaintiff argues that the forklift at issue should have had rear and side view mirrors and wheel guards that would have prevented Plaintiff's injury. Furthermore, Plaintiff argues that Wiggins never discussed the subject of mirrors or wheel guards with the United States and that Wiggins solely decided not to include this information in the technical manual delivered to the United States. Plaintiff also asserts that Wiggins put backup alarms on the forklift even though these were never discussed with the United States. In sum, Plaintiff alleges that in order for the government contractor defense to apply to Wiggins, the United States' specifications should have included these design features instead of the design features being left in the hands of

8

Wiggins.

Wiggins avers that the United States had specified mirrors in its other contracts, but not this contract. Wiggins also asserts that Plaintiff's counsel stipulated that the United States' specifications did not require wheel guards in this instance and that it created the Technical manual based on the United States' specifications.

The first element of the Boyle defense requires that the government approve reasonably precise specifications for the equipment's design. A mere rubber stamp or acceptance of the contractor's design does not establish the first element of the *Boyle* defense. *Tozer v. LTV Corp.*, 792 F.2d 403, 407-408 (4th Cir. 1986). The Fourth Circuit has held that "where the military procurement process involves a...continuous exchange between the contractor and the government, the process itself becomes persuasive evidence of product conformity to precise specifications." *Kleeman v. McDonnell Douglas Corp.*, 890 F.2d 698, 702 (4th Cir. 1989).

The Court finds that Wiggins satisfies this first element. It is clear from the record that Wiggins followed the United States' detailed specifications for the forklift and that a team-like effort existed between Wiggins and the United States throughout the entire design process. The United States was not merely purchasing a ready-made product off the shelf. Instead, the United States included specific details in its design request such as height, weight, length and clearance of the forklift. It also included specifications on operator's overhead guard, electrical system monitors, controls, breaking and accelerator control, and a vast number of other detailed requirements. (Def. Mot. Ex. A Spec. 3.1-3.41.38.) The United States also subjected the forklift to a multitude of tests and reviews throughout the design process. (Def. Mot. Ex. A Spec. Tests 1-14.) Moreover, Wiggins has not manufactured or sold any of this type of forklifts outside the

contract with the United States. (Def. Mot. Ex. 1.) It is clear from the record that no design features were left to the Defendant's complete discretion such that the United States only approved the final end product.

With respect to the lack of mirrors on the forklift at issue, mirrors were not specified in the contract with the United States and the United States had specifically requested mirrors in previous contracts. (Wiggins Dep. at 62.) The United States argues that while Wiggins provided a list of options to other customers that offered mirrors as an accessory, that list was not provided to the United States. (United States Mem. in Opp. 2.) Furthermore, The United States asserts that "[t]he Navy's design inputs and approval of other features of the forklift have no bearing on the question of the mirrors as an alleged design features." (United States Mem. in Opp. 5.) The Court recognizes that it is "possible to have an allegedly defective feature about which the government specifications are silent." *Bailey v. McDonnell Douglass Corp.*, 989 F.2d 794, 799 (5th Cir. 1993). However, in order for the government's specifications to be "reasonably precise" under the defense, the government need not detail every single detail that it did not want included in the design. *Tozer*, 798 F.2d 403, 407-408 (4th Cir. 1986) (permitting the defense to a contractor "so long as government approval of a design 'consists of more than a mere rubber stamp.'") (citing *Schoenborn v. Boeing*, 769 F.2d 115, 122 (3d Cir. 1985)); *Carley v. Wheeled* Coach, 991 F.2d 1117, 1125 (3d Cir. 1993); *Yeroshefsky v. Unisys Corp.*, 962 F. Supp. 710, 718-19 (D. Md. 1997) (holding that "'reasonably precise specifications'" does not, as Plaintiffs contend, mean that the government must exercise discretion with regard to the *specific* feature alleged to be defective," but rather, "a contractor need only show government approval of the *overall* design"). Just because the United States' contract with Wiggins was silent on

alarms does not mean that the United States approved imprecise or general guidelines, that it did not conduct a thorough review of the overall specifications, or that it left important design features to Wiggins. There need not be back and forth discussions dictating the specific exclusion of a design feature in order for the defense to apply.

With respect to the wheel guards, Navy Specification 3.28 specifically states that "[i]f driver or steer wheels, when in a straight ahead position, protrude beyond the body of the truck in excess of 1-1/2 inches (40 mm), suitable wheel guards shall be provided." (Def. Mot. Ex. A Spec. 3.28.) Because the forklift did not extend this distance, Wiggins did not provide wheel guards. (Wiggins Dep. 31-33.) Moreover, Plaintiff's counsel stipulated that wheel guards did not apply to the forklift at issue, and the United States does not dispute this fact. (Wiggins Dep. 32.) The backup alarms that Plaintiff argues that Wiggins included without discussion with the United States were required by OSHA regulations. (Wiggins Dep. 55.) The Navy specifications required that the forklift comply with all OSHA regulations. (Def. Mot. Ex. A Spec. 3.5.) The Technical Manuel that Plaintiff argues lacks information on "blind spots" and "tail swings" was created based solely on the Navy's specifications. (Wiggins Dep. 30.) Finally, the United States specifically reserved the power to approve or disapprove design modifications and ensure that the forklift comply with all requirements of the contract (Def. Mot. Ex. A Spec. 4.1 and 4.1.1.) Moreover, the United States has used the forklift at issue since it was manufactured in 1994. The Fourth Circuit has held that this type of long-term use establishes the government's approval of the design. *Dowd v. Textron*, 792 F.2d 409, 412 (4th Cir. 1986); *see also Trevino v. General Dynamics Corp.*, 865 F.2d 1474, 1486 (5th Cir. 1989) (holding that the defense does not protect contractors from liability for defective designs if the

11

government has delegated its discretion to the contractor, "unless there is approval based on substantive review and evaluation of the contractor's design choices").

Given these facts, it is clear that the United States did not "simply turn over [all] discretion, and the military decisions inherent therein," to Wiggins. *Kleeman*, 890 F.2d at 702. Rather, Wiggins followed the detailed specifications of the United States in constructing the forklift at issue, and the United States conducted substantive review and approval at various stages of the forklift development. Thus, this Court finds that Wiggin's conformed to reasonably precise specifications and therefore meets the first *Boyle* element.

The second *Boyle* element requires that the equipment conform to specifications provided by the government. 487 U.S. at 512. The Fourth Circuit has held that acceptance and use of equipment after the contractor manufactures it, and the United States' involvement in the design process establishes that the item conformed to specifications. *Kleeman*, 890 F.2d at 700-701. As stated above, the United States has used the forklift since 1994, and before accepting the forklift, conducted a multitude of tests to ensure that it conformed to its specifications. Therefore, Wiggins satisfies this second *Boyle* element.

The third *Boyle* element requires the contractor to warn the United States about the dangers in the use of the equipment that were known to the contractor but not to the United States. 487 U.S. at 512. The parties present no evidence of any dangers about which Wiggins knew but failed to disclose to the United States while manufacturing the forklift. Moreover, acceptance and continued use reflects a recognition of any risks involved. *Trevino*, 865 F.2d at 1487. Thus, Wiggins satisfies the third *Boyle* element.

The Court finds that Wiggins has satisfied all of the *Boyle* elements. Therefore, Wiggins is immune from liability under the government contractor defense.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is **DENIED**. Defendant Wiggins Motion for Summary Judgment is **GRANTED**. The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel and parties of record.

**IT IS SO ORDERED.**

Norfolk, Virginia
October 16, 2009

Raymond A. Jackson
United States District Judge